**Opinion issued November 13, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00954-CR

————————————

**KENDRICK BALKA WESLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Harris County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 2444964**

---

## MEMORANDUM OPINION

Appellant Kendrick Balka Wesley was charged by misdemeanor information

with driving while intoxicated (DWI) with a previous conviction.[1] Appellant

---

[1] If the State proves at trial that the accused has previously been convicted once of certain other offenses, including an offense of operating a motor vehicle while intoxicated, the offense is a class A misdemeanor with a minimum punishment of

pleaded not guilty and proceeded to a jury trial. The jury found appellant guilty of DWI. At the punishment phase of the trial, the trial court found that appellant was guilty of his second DWI, a class A misdemeanor, and sentenced appellant to 30 days' confinement in the Harris County Jail. Appellant timely filed a notice of appeal.

On appeal, appellant argues (1) the trial court gave the jury an inaccurate definition of "reasonable doubt," effectively lowering the burden of proof; (2) the trial court erred in convicting appellant of DWI second where no evidence of the prior conviction was presented during the trial's punishment phase; (3) the $100 EMS Trauma Fine is an unconstitutionally assessed court cost; and (4) the EMS Trauma Fine should be removed from the written judgment because it was not orally pronounced.

## Background[2]

Micah Meador is a patrol officer with the Houston Police Department. At 9:57 p.m. on February 11, 2023, Officer Meador observed appellant driving a white Ford Expedition on South Braeswood in Houston, Texas. After observing

---

30 days' confinement. TEX. PEN. CODE § 49.09(a). This is known colloquially and was referred to in this trial as "DWI second," and will be referred to in this opinion as such.

[2] Because appellant does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary.

2

appellant veer from the right lane, swerving and nearly making impact with another vehicle, Officer Meador initiated a traffic stop. Before stopping, appellant drove nearly half a mile, made two turns, and pulled his vehicle into a private drive. Officer Meador approached the vehicle and detained appellant, whom Officer Meador described as "combative" and smelling of alcohol. Officer Meador conducted a search of the vehicle. During the search, Officer Meador observed several unopened alcoholic beverages, including a can of beer, a bottle of tequila, and some peach wine, and a cooler in the trunk compartment containing additional alcoholic beverages. Officer Meador also observed a mason jar labeled "apple pie moonshine" in the vehicle but could not tell if it had been opened.

Officer Meador transported appellant to the Joint Processing Center (JPC), where Officer Meador attempted to conduct standard field sobriety tests on appellant, who refused to participate in the tests. Officer Meador obtained a search warrant for appellant's blood and brought appellant to a phlebotomist at the JPC to execute the warrant by drawing three vials of appellant's blood.

Haley Melbourn is a forensic scientist in the toxicology section at the Houston Forensic Science Center. Melbourn analyzed appellant's blood and opined at trial that appellant's blood alcohol concentration was 0.211 grams per 100 milliliters at the time of the blood draw. Dr. Matthew Cheney is also a forensic scientist, in private practice. Dr. Cheney opined at trial that it was not possible to

know what appellant's blood alcohol concentration was at the time of driving based on the facts known.

The jury found appellant guilty of DWI. Appellant and the State reached an agreed recommendation as to punishment for 30 days' incarceration in the Harris County Jail. The trial court followed the agreed recommendation and sentenced appellant to 30 days' incarceration in the Harris County Jail. The record contains no evidence of a prior DWI conviction or of appellant's having stipulated to receiving a prior DWI conviction. The trial court entered a judgment of conviction for "DWI 2ND."

## I.     The trial court's voir dire discussion of "reasonable doubt"

In his first issue, appellant argues that the trial court gave an erroneous explanation of the "beyond a reasonable doubt" burden of proof. Specifically, appellant argues that the trial court erred when it stated during voir dire that reasonable doubt "is doubt to which you can assign a reason. A reasonable reason."

## A.     Preservation of error.

Before addressing the merits of an issue on appeal, an appellate court should consider whether the issue has been preserved, regardless of whether preservation has been raised by the parties. *Darcy v. State*, 488 S.W.3d 325, 327-28 (Tex. Crim. App. 2016). To preserve a complaint for appellate review, the record must show that an objection was made to the trial court, that the grounds for relief were stated

with enough specificity, and that the trial court ruled upon the objection. TEX. R. APP. P. 33.1(a); *Schmidt v. State*, 612 S.W.3d 359, 365 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). The party must explain to the trial court what he wants and why he thinks he is entitled to it, and do so clearly enough for the judge to understand it and at a time when the trial court is in a position to do something about it. *Singleton v. State*, 631 S.W.3d 213, 217-18 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd).

There are exceptions, however, to the general rule that error must be preserved in the trial court. In *Marin v. State*, the Court of Criminal Appeals assigned error-preservation rules into three categories: "(1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request." 851 S.W.2d 275, 279 (Tex. Crim. App. 1993);[3] *accord Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (analyzing the three categories); *see also Cruz v. State*, 698 S.W.3d 265, 268 (Tex. Crim. App. 2024) (same).

As the Court of Criminal Appeals explained, rights in the third category are forfeitable: they can be lost for failure to insist upon them. *See Marin*, 851 S.W.2d

---

[3] *Marin* was overruled in part on other grounds by *Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997). *See, e.g.*, *Grado v. State*, 445 S.W.3d 736, 738–40, 738 n.6 (Tex. Crim. App. 2014).

at 278–79. "Most rights fall into the third category"—and "[e]ven constitutional rights may be forfeitable." *Cruz*, 698 S.W.3d at 268.

Appellant argues that he may raise his claim regarding the trial court's definition of "reasonable doubt" for the first time on direct appeal, citing *Proenza*. The Court of Criminal Appeals explained in *Proenza* that violations of article 38.05[4] of the Texas Code of Criminal Procedure may be raised for the first time on direct appeal because compliance with article 38.05 is "fundamental to the proper functioning of our adjudicatory system." *Id*. at 798-99. Appellant argues for a broader application of *Proenza* for judicial comments other than purported violations of article 38.05, citing the case's discussion of "the right to be tried in a proceeding devoid of improper judicial commentary." *Id*. at 801.

Although the majority opinion in *Proenza* did not specifically address error preservation in the context of a defendant's complaint that a trial court judge's comment violated his constitutional rights, in her dissent, Presiding Judge Keller stated that the majority adopted the stance that "all complaints about judicial comments in front of the jury are immune from preservation requirements[.]" *Proenza*, 541 S.W.3d at 814 (Keller, P.J., dissenting). We do not need to address

---

[4]  "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. art. 38.05.

6

this issue; for this appeal, we assume, without deciding, that appellant may raise his constitutional challenge to the judge's comments for the first time on appeal. *See Garcia v. State*, No. 01-23-00199-CR, 2025 WL 450463 at *3 (Tex. App.—Houston [1st Dist.] Feb. 11, 2025, no pet.) (mem. op., not designated for publication) (addressing merits of constitutional due process challenge to judicial comments during voir dire without deciding preservation issue); *Gibson v. State*, No. 14-19-0082-CR, 2020 WL 7626406, at *5 (Tex. App.—Houston [14th Dist.] Dec. 22, 2020, pet. ref'd) (mem. op., not designated for publication) (same); *see also Unkart v. State*, 400 S.W.3d 94, 98 (Tex. Crim. App. 2013) (addressing merits of challenge to judicial comments during voir dire without definitively stating no preservation required).

## B.    Applicable law

Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A judge should not act as an advocate or an adversary for any party. *Id.*; *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). To reverse a judgment due to a judge's improper comments, we must find that (1) judicial impropriety was in fact committed and (2) probable prejudice to the complaining party resulted. *Luu v. State*, 440 S.W.3d 123, 128-29 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "Only when a trial

7

court's comments during voir dire are reasonably calculated to benefit the State or prejudice the defendant's rights will reversible error occur." *Gardner v. State*, 733 S.W.2d 195, 210 (Tex. Crim. App. 1987).

Texas courts are not required to give jurors a definition of proof beyond a reasonable doubt. *Anderson v. State*, 414 S.W.3d 251, 256 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *Carriere v. State*, 84 S.W.3d 753, 758 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). The better practice is to give no definition of reasonable doubt at all to the jury. *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). Jurors should supply their own meaning of the term "beyond a reasonable doubt" based on "their own common-sense understanding of the words." *Fuller v. State*, 363 S.W.3d 583, 587 (Tex. Crim. App. 2012).

Our sister court recently held similar comments during voir dire to be harmless. *Henry v. State*, No. 14-24-00316-CR, 2025 WL 1833397 at *4 (Tex. App.—Houston [14th Dist.] July 3, 2025, pet. ref'd). In *Henry*, during voir dire the trial court characterized "beyond a reasonable doubt" by explaining,

> [i]f you have doubt based on reason as it relates to one of the elements of the offense, then you have to find the defendant not guilty. So it's reasonable doubt, not illogical doubt, not doubt that's just out of thin air. It's reasonable doubt concerning what the State has to prove.

*Id.* at *3. The court of appeals reasoned that "[t]he trial court's comment was circular and uninformative," comparing it to the portion of the *Geesa*[5] jury charge that the Court of Criminal Appeals discarded as "useless" in *Paulson*.[6] *Id.* at *3-4. Taking into account the jury charge and the entirety of the trial court's voir dire, the court of appeals concluded that any error in the trial court's comment was harmless and did not contribute to the conviction. *Id.* at *4.

Appellant complains about the trial court's comment during voir dire that reasonable doubt "is doubt to which you can assign a reason." However, this comment was a very brief portion of the trial court's overall discussion of the "beyond a reasonable doubt" burden of proof:

> [The trial court:] We have a standard by which one has to be proven guilty. That standard is beyond a reasonable doubt. Not beyond any doubt. Not beyond all doubt, right? Because if you were 100 certain, you would have had to be what kind of person? Not a juror, not a judge, not an attorney, but you'd have to be someone who was there? An eyewitness? And then you could be 100 percent, right?
>
> So, that's not what beyond a reasonable doubt is. It's not all doubt, but it is doubt to which you can assign a reason. A reasonable reason. Okay?
>
> Here's where the first dilemma – another dilemma comes in. Most often jurors want to know, Judge, define beyond a reasonable doubt

---

[5]    *Geesa v. State*, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991), overruled by *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

[6]    *Paulson*, 28 S.W.3d 570, 572 (Tex. Crim. App. 2000) ("The first definition is useless. It is like saying 'A white horse is a horse that is white.'").

for us so that if we make it over there as one of the lottery winners, we know what we are doing. Anybody want a definition? You want me to explain that to you so that you're crystal clear about how to make that decision? I know you do. And the legislature says, you may not. I may not. They can't either. They will likely give you some examples and try to guide you, put you in the right mind frame of it. But no one can define for you because the legislature says, guess what? You [] come in here with your experience, your personal experiences, you as citizens also of these United States, you bring everything in here that you need to listen to the evidence and make a decision. You are equipped right now with everything that you need to make that decision according to our legislature.

So, we cannot define it for you. Beyond a reasonable doubt will be your decision. What I can tell you is that it is the highest level, the highest burden of proof in all of our nation. It's the highest level. All right, Judge, what does that mean? You would think – who has children? How old are your children?

[Prospective juror:] 26 and 24.

[The trial court:] 26 and 24. Remember when they were 5 and 6?

[Prospective juror:] Uh-huh.

[The trial court:] Happy go lucky kids. You're a happy go lucky parent and I wanted to say that you were an unfit parent.

[Prospective juror:] Always.

[The trial court:] But if I wanted to say it, if I were trying to say it as a Judge, that you were an unfit parent, what kind of evidence would you want me to have? How strong does that evidence need to be to prove that you're an unfit parent in a courtroom? You would want me to have strong evidence –

[Prospective juror:] Of course.

[The trial court:] – in order to take your children away from you, right?

[Prospective juror:] Uh-huh.

[The trial court:] Everybody agree with that? You'd say, hey attorneys, bring it. Because I'm a good parent. All right? If you're going to take my kids, you better bring it and make that case good. Well, believe it or not, the standard of proof to take your children is lower than the standard of proof it requires to prove someone guilty beyond a reasonable doubt. It's lower. Because again, we are talking about your liberty. Nothing is more important than – you know, I love my children, right? But to put you in the right mindset, you need to understand that we are dealing with the highest burden of proof. Okay?

Now, that burden always lies with the District Attorney's Office. It never shifts to the defense. It never shifts. Their responsibility is to prove each and every element of the criminal offense beyond a reasonable doubt. If you have any doubt as to one, two, three, or all of those, then that, your verdict, will reflect that decision. Okay?

The jury charge stated the following regarding the burden of proof:

The burden of proof throughout trial is always on the State. The Defendant does not have the burden to prove anything. The State must prove every element of the offense beyond a reasonable doubt to establish guilt for the offense. If the State proves every element of the offense beyond a reasonable doubt, then you must find the Defendant guilty. It is not required that the State proves the Defendant's guilt beyond all possible doubt; it is required that the State's proof excludes any and all reasonable doubt concerning the Defendant's guilt.

If the State does not prove every element of the offense beyond a reasonable doubt, then you must find the Defendant not guilty. If, after you have considered all the evidence and these instructions, you have a reasonable doubt about whether the Defendant is guilty, you must find the Defendant not guilty.

As with the comment in *Henry*, the comment that appellant complains of on appeal was "circular and uninformative," as well as "brief and not repeated in the trial

11

court's written charge." *Henry*, 2025 WL 1833397 at *4. Likewise, the jury was otherwise properly advised as to the presumption of innocence and that the burden of proof always rested with the prosecution. *Id.*

As such, any error in the trial court's brief comment about "doubt to which you can assign a reason" was harmless and did not contribute to the conviction. *Id.*; *see Luu*, 440 S.W.3d at 128-29 (requiring that probable prejudice to the complaining party resulted). We overrule this point of error.

## II. The prior-conviction enhancement allegation was not proven.

In his second issue, appellant argues that the trial court erred in convicting appellant of DWI second where there was no evidence of a prior DWI conviction presented at trial. We agree.

## A. Standard of review

We apply the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979), in determining whether the evidence is sufficient to support each element of a criminal offense that the State must prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We review the legal sufficiency of the evidence by determining "whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). Under a legal

12

sufficiency review, "our role is not to become a thirteenth juror." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)). "This Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Williams*, 235 S.W.3d at 750 (quoting *Dewberry*, 4 S.W.3d at 740). Our role is to act as a "due process safeguard," requiring us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the offense of which he is accused. *Williams*, 235 S.W.3d at 750. We may consider both direct and circumstantial evidence in our legal sufficiency analysis, as well as any reasonable inferences that may be drawn from the evidence. *Id.*

We examine all evidence in the light most favorable to the fact finder's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Williams*, 235 S.W.3d at 750. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "the standard of review on appeal is the same for both direct and circumstantial evidence cases." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010) (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)); *see also Clayton v. State*, 235 S.W.3d 772,

13

778 (Tex. Crim. App. 2007) (stating "circumstantial evidence alone can be sufficient to establish guilt").

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We thus defer to the jury to fairly "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A reviewing court, faced with a record of historical facts supporting conflicting inferences, must presume the factfinder resolved any such conflict in favor of the prosecution, and must defer to that resolution. *Id*. at 326.

## B.    Analysis

Typically, a person's first conviction for DWI is a class B misdemeanor, with a minimum term of confinement of 72 hours. TEX. PENAL CODE § 49.04(b). However, if a person has been previously convicted of a single DWI, the second conviction is a class A misdemeanor with a minimum term of confinement of 30 days.[7] *Id*. § 49.09(a).

Where a person is accused of the class A misdemeanor of DWI with a prior conviction, the existence of a single prior conviction for misdemeanor DWI is a punishment issue. *Oliva v. State*, 548 S.W.3d 518, 534 (Tex. Crim. App. 2018). In

---

[7]    There are aggravating factors that could raise the punishment range of a first DWI conviction which we do not discuss here, as they are not relevant to the instant case.

14

*Oliva*, the appellant was found guilty of the offense of DWI at the guilt-innocence phase of trial. *Id.* at 520. At the punishment phase, the State read the prior-conviction allegation to the jury and presented evidence of the defendant's prior DWI conviction, after which the jury found the prior-conviction allegation to be true. *Id.* The judgment labeled the appellant's subsequent conviction as a second DWI and the degree of offense as a class A misdemeanor. *Id.* The court of criminal appeals upheld the procedure despite ambiguities in the statute, holding that litigation of the prior-conviction allegation at the punishment stage of trial is proper in a DWI prosecution. *Id.* at 534.

As appellant notes, the punishment phase of trial was relatively brief and informal. Before pronouncing appellant's sentence, the trial court announced that appellant had "been convicted of the offense of driving while intoxicated as a second offender." However, the record contains neither evidence of a prior conviction for DWI nor a written or oral stipulation by appellant to a prior conviction for DWI. Although the agreed sentence of 30 days is the minimum term of confinement for a second DWI conviction,[8] it is also the minimum punishment for a person convicted of a class B misdemeanor after a prior conviction for any felony, class A misdemeanor, or class B misdemeanor[9] and appellant's motion for community supervision suggests he was previously convicted of a felony. Without

---

8       TEX. PENAL CODE § 49.09.
9       TEX. PENAL CODE § 12.43(b)(2).

prior-conviction evidence of a DWI during appellant's trial (or otherwise in the record), the evidence is legally insufficient to support the trial court's conviction for DWI second.

The State argues that appellant negotiated a plea-bargain agreement with the State regarding the minimum punishment for a DWI second offense, thus relieving the State of its burden to prove the prior conviction. In support of its argument, the State cites *Deen v. State*, 509 S.W.3d 345 (Tex. Crim. App. 2017), in which a defendant was estopped from challenging the validity of a prior conviction with a sentence below the minimum sentence allowed in the punishment range, where the defendant accepted the benefit of the illegally lenient sentence. *See id*, at 349-51. The State also cites *Rhodes v. State*, 240 S.W.3d 882 (Tex. Crim. App. 2007), for the same proposition. *See id.* at 891. However, the instant case is distinguishable from *Deen* and *Rhodes*, in that appellant did not receive an illegally lenient sentence—he received the minimum allowable sentence for a DWI second.

The State further argues that we should presume, pursuant to rule 44.2(c)(4) of the Texas Rules of Appellate Procedure, that appellant pleaded "true" to the prior-conviction enhancement allegation when he negotiated the agreed recommendation for 30 days' confinement as punishment, even though appellant's plea of "not guilty" to the information is a matter of record.

In *Wood v. State*, the Court of Criminal Appeals declined to presume that the defendant pleaded "true" to the punishment enhancement where the record showed the contrary. 486 S.W.3d 583, 589 (Tex. Crim. App. 2016). In *Wood*, the defendant pleaded "not guilty" to the offense of evading arrest with a motor vehicle, but the record did not indicate whether he entered a plea to the enhancement allegation. *Id*. at 584-85. During the guilt-innocence phase of trial, the State asked the defendant questions about his criminal history. *Id*. at 585. During the punishment phase of trial, prior to any testimony or evidence being presented, the trial court stated on the record that it found the enhancement allegation "true," and the judgment of conviction indicated that the defendant pleaded "true" to the enhancement paragraph. *Id*. at 586. Although the State argued that the Court of Criminal Appeals should apply a presumption that the defendant pleaded "true" to the enhancement, the Court of Criminal Appeals declined to do so. *Id*. at 589. The court reasoned that, where the record showed that the defendant disputed guilt and punishment by pleading not guilty to the indictment, contesting the evidence at trial, and requesting probation at punishment, the court would not presume that appellant pleaded "true" to the enhancement paragraph of the indictment. *Id*.

Moreover, a trial court may not impermissibly relieve the State of its burden to prove a prior final conviction. *See Fletcher v. State*, 214 S.W.3d 5, 9 (Tex. Crim.

17

App. 2007) (holding evidence insufficient to prove enhancement without evidence of final prior conviction).

The State cites our opinion in *Johnson v. State* in support of its argument that appellant pleaded "true" off the record and failed to object to the court reporter's failure to make a record of that portion of the proceedings. 409 S.W.3d 738, 741-42 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However, in *Johnson*, the entire sentencing occurred off the record, and the plea paperwork contained a waiver of the right to have the court reporter record the proceedings. *Id*. at 740-41. Our opinion in *Johnson* deals with the forfeiture of the right to record a proceeding, not a presumption that certain proceedings occurred off the record. *Id*. at 741 ("[T]o avoid forfeiture of the right to a record of, for example, a sentencing hearing, the defendant must either request a court reporter or object to the reporter's failure to record the proceedings.").

In this case, there is a "not guilty" plea in the record and no written waiver of the right to have the court reporter record the proceedings. Therefore, we cannot presume that appellant pleaded "true" to the prior offense enhancement allegation. *Wood*, 486 S.W.3d at 589.

## Conclusion

Having found reversible error in the punishment phase of appellant's trial, we reverse and remand for a new trial on punishment only.[10]

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[10] We do not reach appellant's third and fourth points of error because they relate to punishment, and we are reversing the trial court's judgment on punishment and remanding for a new punishment trial. *See* TEX. R. APP. P. 47.1 (providing that "court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to the disposition of the appeal").